# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ALABAMA-QUASSARTE TRIBAL TOWN,<br><br>       Plaintiff,<br><br>v.<br><br>THE UNITED STATES OF AMERICA;<br>KENNETH SALAZAR, Secretary of the<br>United States Department of the Interior;<br>LAURA DAVIS, Associate Deputy Secretary<br>of the Department of the Interior and Acting<br>United States Assistant Secretary for Indian<br>Affairs;<br>TIMOTHY F. GEITHNER, Secretary of the<br>United States Department of the Treasury,[1]<br><br>       Defendants. | Case No. CIV-06-558-RAW |

## ORDER & OPINION

Before the court are the Plaintiff's motion for summary judgment [Docket No. 89] and

the Defendants' motion for dismissal or, in the alternative, for summary judgment [Docket Nos.

90 and 92]. For the reasons delineated below, both summary judgment motions are denied.

Defendants' motions in limine [Docket Nos. 105 and 106] are hereby denied as moot.

The court notes that Plaintiff filed this action on December 29, 2006. The case was

assigned to the undersigned judge on January 18, 2007. Thereafter the parties jointly filed

several motions requesting extensions, enlargements of time, and an administrative closing. The

---

[1]The court has substituted the names of the persons who currently hold these offices in accordance with Fed. R. Civ. P. 25.

court understands, as the parties have explained, that Plaintiff filed this action to preserve its trust accounting claims against the expiration of the statute of limitations. The court also understands that the parties have required extra time and extensions to collect and evaluate the voluminous evidence and to engage in resolution discussions. These discussions have ended without success.

The court finds herein that: (1) this court has jurisdiction, (2) the Defendants' conclusion that it holds no assets in trust for Plaintiff is a final agency action, (3) any requirement for the exhaustion of Plaintiff's administrative remedies would have been futile, and (4) the Defendants' final agency action is arbitrary and capricious. Therefore, the court remands this action to the Defendants for development of a full and complete administrative record and a reconsideration of the final agency action.

## CLAIMS

In its Complaint, Plaintiff requests: (1) a declaratory judgment that the Defendants have failed to fulfill the legal obligations and duties as trustee by, among other things, failing to provide the Plaintiff with a full accounting of the Plaintiff's trust funds and by failing to assign the Wetumka Project lands as originally intended and as Congress had envisioned through the Oklahoma Indian Welfare Act of June 26, 1936, 25 U.S.C. §§ 501, *et seq*. (hereinafter "OIWA"); and (2) an injunction compelling the Department of the Interior Defendants to make the assignment to the Plaintiff of trust lands owed under the OIWA and to provide the Plaintiff with a full and complete accounting of all of the Plaintiff's trust funds and assets.

On November 17, 2008, the court granted Defendants' motion for partial judgment on the pleadings as to the Wetumka Project lands and dismissed those claims. Docket No. 50. The only claims remaining are the trust accounting claims. Plaintiff still seeks a full and complete

2

accounting of its trust funds and assets.

As the court noted in its November 17, 2008 Order, Plaintiff argues that between 1961 and 1976, income from surface leases derived from the Wetumka Project lands was deposited into an Individual Indian Money (hereinafter "IIM") account in Plaintiff's name, and then was later transferred to a tribal trust account in the Plaintiff's name (hereinafter "Surface Lease Income Trust"). This Surface Lease Income Trust is the only trust Plaintiff specifically mentioned in its Complaint. The court noted, therefore, that Plaintiff's trust accounting claims are limited to the Surface Lease Income Trust.

## BACKGROUND

### Tribe Recognition

On January 10, 1939, Plaintiff ratified its constitution and bylaws pursuant to the OIWA. Plaintiff is one of several tribal towns that make up the Muscogee (Creek) Nation (hereinafter "Creek Nation"). Plaintiff maintains, however, federal recognition separate and distinct from the Creek Nation.

The Creek Nation adopted a constitution pursuant to the OIWA in 1979. Of course, as Defendants point out by their reference to Muscogee (Creek) Nation v. Hodel, 851 F.2d 1439 (D.C. Cir. 1988), the Creek Nation was forcibly removed from the southeastern United States in the 1830's and sent to land in what is now Oklahoma. The Creek Nation was given this new land with the right to perpetual self-government by a treaty of March 24, 1832. Clearly, the federal government has recognized the Creek Nation since at least as early as 1832. As early as 1867, the Creek Nation had established a written constitutional form of government that included three branches – executive, legislative and judicial.

Plaintiff seems to suggest that it became a "recognized" tribe before the Creek Nation because it adopted a constitution pursuant to the OIWA before the Creek Nation. Section 503 of the OIWA provides in pertinent part: "[a]ny *recognized tribe or band of Indians* residing in Oklahoma shall have the right to organize for its common welfare and to adopt a constitution and bylaws, under such rules and regulations as the Secretary of the Interior may prescribe." The plain language of the statute indicates that both Plaintiff and the Creek Nation were "recognized" tribes before adopting their respective constitutions pursuant to the OIWA.

**The Wetumka Project Lands**

Section 501 of the OIWA provides in pertinent part:

The Secretary of the Interior is hereby authorized, in his discretion, to acquire by purchase, relinquishment, gift, exchange, or assignment, any interest in lands, water rights, or surface rights to lands, within or without existing Indian reservations, including trust or otherwise restricted lands now in Indian ownership . . . .
Title to all lands so acquired shall be taken in the name of the United States, in trust for the tribe, band, group, or individual Indian for whose benefit such land is so acquired . . . .

Pursuant to its authority under the OIWA, between 1938 and 1942, the United States purchased 878.25 acres in Hughes County, Oklahoma, which are commonly known as the Wetumka Project lands. The United States Department of the Interior, Bureau of Indian Affairs (hereinafter "BIA") local land field agent worked with Plaintiff in selecting lands for purchase.[2]

Correspondence from the Department of the Interior (hereinafter "DOI") reflects an intent

---

[2]Defendants do not dispute the verity of this statement, but argue that it is immaterial and irrelevant to the accounting claim. The court disagrees. While this court found that Plaintiff's claim to the Wetumka Project lands was excluded by, *inter alia*, the statute of limitations imposed by the Indian Claims Commission Act (hereinafter "ICCA"), this fact is relevant and helpful in determining on whose behalf the IIM account in question was originally created.

by the DOI to purchase land for use by Plaintiff.[3]  In a letter dated November 7, 1941, a Land Field Agent recommended that land in the Wetumka project be purchased for Plaintiff.  His recommendation was to provide these lands to "the landless Indians of the Alabama-Quassarte Tribal Town." Additionally, a Senate Congressional Record dated February 20, 1968 states: "In Hughes County, 878.25 acres known as the Wetumka project were acquired for the Alabama-Quassarte Band with title in the name of the United States for the band."

Contrary to evidence that suggests the lands were purchased for Plaintiff's use, however, title to the Wetumka Project lands was taken by the United States in trust for the Creek Nation "until such time as the use of the land is assigned by the Secretary of the Interior to a tribe, band, or cooperative group organized under the [OIWA], or to an individual Indian, then in trust for such tribe, band, group or individual."[4]

Nevertheless, in a letter dated April 19, 1972, an Area Realty Officer at the BIA[5] stated that "[w]hile title to the [Wetumka Project] land is in the Creek Tribe, the file supports the purpose as being for the use of the Alabama-Quassarte Town members."  Additionally, in a letter

_____

[3]Again, Defendants do not dispute the verity of this statement, but argue that it is immaterial and irrelevant to the accounting claim.  For the same reason the court gave above, it disagrees.

[4]As the court noted above, Plaintiff emphasizes that it adopted a constitution pursuant to the OIWA *before* the Creek Nation adopted a new constitution pursuant to the OIWA.  This fact seems to be of no consequence to this action.  While the intent may have been different, the plain language of section 501 does not require that the tribe, band, group, or individual Indian take advantage of the provisions of section 503 before the Secretary of the Interior may acquire lands for that tribe, band, group, or individual Indian.  Additionally, the court has not found, nor has Plaintiff provided, any authority mandating such a requirement.

[5]The letter does not include any letterhead, and the officer simply signed his name and "Area Realty Officer."  The document is, however, from the BIA's files as indicated by the footer on the bottom, left corner of the page.

dated March 23, 1981, an Assistant Solicitor, Tribal Government and Alaska, Division of Indian Affairs suggested that beneficial title should be placed in Plaintiff rather than the Creek Nation and recommended that the circumstances surrounding the land purchase be reviewed and a determination made as to whether Plaintiff or the Creek Nation is the proper beneficiary.

No record exists of the Wetumka Project lands ever being reassigned to another tribe, band, group or individual Indian. Also, the Wetumka Project lands, apparently, were never formally assigned to Plaintiff or to the Creek Nation. Plaintiff argues, and Defendants dispute, that the language of the Wetumka Project deeds contemplated such a future assignment. The Wetumka Project lands have remained in trust for the Creek Nation.

**The Surface Lease Income Trust**

The DOI authorized the establishment of an IIM account (number xxxx0008) in 1943 to administer the fees collected from leasing the Wetumka Project lands. The ledger sheets from this IIM account refer to it as the "Alabama-Quassarte Tribal Town (Oklahoma), Wetumka Project–Creek Tribe" account. From 1961 to 1976, income from surface leases on the Wetumka Project lands was deposited into this IIM account in Plaintiff's name. According to a DOI correspondence, during that time, the Creek Nation had advised the Oklahoma Agency Superintendent that it no longer wished to lease any of its tribal land for agricultural purposes.

A letter from an Okmulgee Agency Field Representative indicates that no funds from the surface leases on the Wetumka Project lands were deposited in the Creek Nation's tribal trust funds accounts. The letter also certifies that the Plaintiff's balance as of August 31, 1989 was $32,364.31 and states that "[t]his office reconciles the Alabama/Quassarte Tribal Town's trust on a monthly basis and finds it to be current."

From time to time, disbursements from this account for use by the Plaintiff was authorized by the Alabama-Quassarte Tribal Board of Trustees and the Creek Tribe. Defendants presented evidence showing that on May 1, 1980, the BIA Muskogee Area Director stated that "release and actual use of the monies credited to an account for the Alabama-Quassarte Tribal Town, Wetumka Project - Creek Tribe, as a result of the provision of farming and grazing leases, would be at the discretion of the Creek Nation." Pursuant to a resolution by the Creek Nation in 1985, however, the BIA has disbursed funds from the account to Plaintiff without the prior approval of the Creek Nation.

In 1987, the DOI's Assistant Secretary for Indian Affairs issued a memorandum stating that the Bureau of Indian Affairs (hereinafter "BIA") was ending its policy of allowing tribes to place funds into IIM accounts. The funds in the IIM account attributed to the Wetumka Project lands were then transferred into a Proceeds of Labor (hereinafter "PL") account (number xxxx7067). The PL account number xxxx7067 is, therefore, the successor account to the IIM account number xxxx0008. These two accounts are what the court previously referred to as the Surface Lease Income Trust.[6] While the IIM account 0008 bore Plaintiff's name, Defendants argue that it and PL account 7067 are for the benefit of the Creek Nation and that release of any of those funds to Plaintiff would be in the discretion of the Creek Nation, despite the Creek Nation's prior resolution referenced above.

Despite evidence to the contrary, Defendants have definitively stated that they do not hold any trust accounts for Plaintiff. The Office of Special Trustee for American Indians (hereinafter

---

[6]For clarity and consistency, the court will continue to refer to these two accounts and the funds within them as the Surface Lease Income Trust, but will also refer to the accounts individually as "IIM account 0008" and "PL account 7067" when necessary.

"OST") does not consider Plaintiff to be the "account holder" for PL account 7067. Moreover, Quentin Jones, a BIA employee, avers that his "review of the 'Alabama-Quassarte' records revealed that there are no IIM accounts, no title documents, and no tracts of land, under 'Alabama-Quassarte.'" He further avers: "The Interior Department does not hold or manage any lands, resources, or other non-monetary assets in trust for the benefit of the Alabama-Quassarte Tribal Town." He does not specifically mention whether the DOI holds any PL accounts for the benefit of Plaintiff.

## DEFENDANTS' MOTION TO DISMISS / JURISDICTION

### APA Claims

Defendants argue that Plaintiff has not established that this court has subject matter jurisdiction to hear Plaintiff's trust accounting claims and that those claims must, therefore, be dismissed. According to Defendants, Plaintiff only alleges that jurisdiction is proper under 28 U.S.C. §§ 1331 and 1362. Defendants state that these general jurisdictional statutes do not waive sovereign immunity or create any private rights of action.

Defendants argue that Plaintiff failed to identify any federal law waiving sovereign immunity and creating a private cause of action for its trust accounting claim. Defendants acknowledge that the Administrative Procedures Act, 5 U.S.C. § 701 *et seq*., (hereinafter "APA") "provides the generally applicable means for obtaining judicial review of actions taken by federal agencies." Regional Mgmt. Corp., Inc. v. Legal Servs. Corp., 1869 F.3d 457, 461 (4th Cir. 1999)(citation omitted). Section 702 of the APA "'waive[s] sovereign immunity in most suits for nonmonetary relief' against the United States, its agencies, and its officers." Robbins v. United States Bureau of Land Mgmt., 438 F.3d 1074, 1080 (10th Cir. 2006).

Ultimately, Defendants argue that "the only applicable waiver of sovereign immunity available to Plaintiff in this [c]ourt, if Plaintiff were to meet the applicable requirements, remains the APA's waiver of sovereign immunity." Defendants then state that the court "should dismiss any non-APA claims that Plaintiff seeks to advance in this matter."

Contrary to Defendants' arguments, Plaintiff alleged in paragraph six of its Complaint that jurisdiction is proper in this court under 28 U.S.C. §§ 1331, 1361, 1362 and 5 U.S.C. §§ 702 and 706. Clearly, Plaintiff alleged jurisdiction in this court pursuant to the APA. Section 702 creates a right of review and states in pertinent part:

> A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party. The United States may be named as a defendant in any such action, and a judgment or decree may be entered against the United States . . . .

Section 706 [7] provides in pertinent part:

> To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall–
> (1) compel agency action unlawfully withheld or unreasonably delayed; and
> (2) hold unlawful and set aside agency action, findings, and conclusions found to be–
> (A) arbitrary, capricious, an abuse of discretion, or otherwise not in

---

[7]Plaintiff seems to request that the court act pursuant to section 706(1). As the court will explain more fully later, the court believes it should utilize 706(2) instead, as it is an agency "conclusion" that must be addressed, and the court does not believe, as Plaintiff does, that it is a foregone conclusion that Defendants owe Plaintiff an accounting. It first must be decided whether the Surface Lease Income Trust (the only trust identified by Plaintiff and remaining at issue in this action) belongs to Plaintiff or to the Creek Nation as Defendants concluded.

accordance with the law;
(B) contrary to constitutional right, power, privilege, or immunity;
(C) in excess of statutory jurisdiction, authority, or limitations, or
short of statutory right;
(D) without observance of procedure required by law;
(E) unsupported by substantial evidence in a case subject to section
556 and 557 of this title or otherwise reviewed on the record of an
agency hearing provided by statute; or
(F) unwarranted by the facts to the extent that the facts are subject
to trial de novo by the reviewing court.

Plaintiff seeks declaratory and injunctive relief requiring Defendants to provide Plaintiff
with a full and complete accounting of the Surface Lease Income Trust. As Defendants seem to
recognize, this court has jurisdiction to hear Plaintiff's trust accounting claims pursuant to the
APA. The court need not dismiss "any non-APA claims" as Defendants request because
apparently none have been pled.

**Final Agency Action**

Defendants next argue that Plaintiff has failed to set forth jurisdictional facts entitling it
to pursue an APA claim. As Defendants note, "a plaintiff seeking judicial review pursuant to the
APA must (i) identify some 'final agency action,' and (ii) demonstrate that its claim falls within
the zone of interests protected by the statute forming the basis of its claims." Catron Cnty. Bd. of
Comm'rs, New Mexico v. United States Fish and Wildlife Serv., 75 F.3d 1429, 1434 (10th Cir.
1996).

Defendants argue that Plaintiff has failed to: (1) identify any final agency action, (2) set
forth the statute upon which it bases its accounting claim, and (3) demonstrate that its claim falls
within the necessary zone of interests of such a statute. The court disagrees.

Defendants have definitively stated that they do not hold any assets in trust for Plaintiff.
In fact, in the motion now before the court, Defendants argue that if the court does not dismiss

10

this action for lack of jurisdiction that it should grant summary judgment to Defendants because they "hold no assets of any kind in trust for Plaintiff."  Defendants came to this conclusion despite considerable evidence to the contrary and in response to Plaintiff's requests for an accounting of its trust assets.  Resolution discussions have ended, and Defendants have clearly expressed that they have no intention of reviewing their conclusion further.

Moreover, "[i]t is well established that the finality of an administrative action depends on whether the action imposes an obligation, denies a right or fixes some legal relationship as a consummation of the administrative process."  Mobil Exploration & Producing U.S., Inc. v. Department of Interior, 180 F.3d 1192, 1197 (10th Cir. 1999) (citation and quotations omitted). To be a "final agency action," the action must: (1) "mark the 'consummation of the agency's decisionmaking process,'" and (2) "be one by which 'rights or obligations have been determined,' or from which 'legal consequences will flow.'"  Id. (citation omitted).  Defendants' conclusion in this case that they hold no assets in trust for Plaintiff both: (1) marks the consummation of their decisionmaking process, and (2) is a conclusion from which rights and obligations have been determined and from which legal consequences will flow.  Thus, Defendants' conclusion that they hold no assets in trust for Plaintiff is a "final agency action."[8]

_____

[8]In its Complaint, Plaintiff did not identify Defendants' conclusion that they do not hold any assets in trust for Plaintiff.  At the time Plaintiff filed its Complaint, however, Defendants had not clearly made such a conclusion.  A final agency action has now occurred.  The court believes it would be contrary to judicial economy and the benefit of the parties to dismiss the claims on the basis that the final agency action occurred after the Complaint was filed and then require Plaintiff to re-file.

Moreover, Plaintiff did allege in its Complaint that Defendants holds assets in trust for Plaintiff and have continually refused to give Plaintiff an accounting of those trust assets. Plaintiff requested the court to compel agency action unlawfully withheld or unreasonably delayed pursuant to 5 U.S.C. § 706(1).  "The APA provides relief for a failure to act in § 706(1)." Norton v. Southern Utah Wilderness Alliance, 542 U.S. 55, 62 (2004).  Plaintiff alleged that Defendants "failed to take a *discrete* agency action that [they are] *required to take*."  Id. at 64

Additionally, Plaintiff has set forth statutes upon which it bases its accounting claims and has demonstrated that its claims fall within the necessary zone of interests of those statutes. Plaintiff bases its claims on 28 U.S.C. §§ 1331[9], 1361[10], and 1362[11]. As this action involves a federally recognized Indian tribe (§ 1362) bringing an action under the laws of the United States (§§ 1331 and 1362) to compel agency action (§ 1361), Plaintiff's claims clearly fall within the necessary zone of interests of those statutes.

Moreover, the American Indian Trust Fund Management Reform Act of 1994 memorialized the federal government's preexisting trust responsibilities. Cobell v. Norton, 240 F.3d 1081, 1090 (D.C. Cir. 2001). Those trust responsibilities include: (1) providing adequate systems for accounting for and reporting trust fund balances; (2) providing adequate controls over receipts and disbursements; (3) providing periodic, timely reconciliations to assure the accuracy of accounts; (4) preparing and supplying periodic statements of account performance and balances to account holders; and (5) establishing consistent, written policies and procedures

---

(emphasis in original). If Defendants hold assets in trust for Plaintiff (a question of fact), then they do owe Plaintiff an accounting (as the court explains more fully below), which was certainly unreasonably delayed, as was their conclusion that they do not hold assets in trust for Plaintiff.

In any event, Defendants' refusal is now ultimately based on its conclusion that it does not hold any assets in trust for Plaintiff. The court will, therefore, utilize the provisions of § 706(2).

[9]Section 1331 places original jurisdiction in the district courts over "all civil actions arising under the Constitution, laws, or treaties of the United States."

[10]Section 1361 places original jurisdiction in the district courts over "any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."

[11]Section 1362 places original jurisdiction in the district courts over "all civil actions, brought by any Indian tribe or band with a governing body duly recognized by the Secretary of the Interior, wherein the matter in controversy arises under the Constitution, laws, or treaties of the United States."

for trust fund management and accounting.  Id. at 1090 n. 2.  As the Cobell court notes, the 1994

Act "recognized and reaffirmed what should be beyond dispute–that the government has

longstanding and substantial trust obligations to Indians, particularly to IIM trust beneficiaries,

not the least of which is a duty to account."  Id. at 1098.  Moreover, the 1994 Act does not limit

the extent of the government's obligations.  Id. at 1100.

As in Cobell, the parties here do not dispute that the federal government owes IIM

beneficiaries these duties.  See id. at 1090.  In fact, it is "well established that the Government in

its dealings with Indian tribal property acts in a fiduciary capacity."  Id. at 1098.  The OST has

the responsibility of overseeing a "fair and accurate accounting" of trust accounts.  Id. at 1091.

The issue here is only whether Plaintiff is the owner and proper beneficiary of the Surface Lease

Income Trust.

**Exhaustion of Administrative Remedies**

Finally, Defendants argue that Plaintiff failed to exhaust its administrative remedies and

that this action should, therefore, be dismissed.  Defendants argue that Plaintiff is required to

exhaust the available administrative remedies before filing suit.  The doctrine of exhaustion of

administrative remedies is distinct from the doctrine of finality.

> [T]he finality requirement is concerned with whether the initial decisionmaker has
> arrived at a definitive position on the issue that inflicts an actual, concrete injury;
> the exhaustion requirement generally refers to administrative and judicial
> procedures by which an injured party may seek review of an adverse decision and
> obtain a remedy if the decision is found to be unlawful or otherwise inappropriate.

Darby v. Cisneros, 509 U.S. 137, 144 (1993) (citation omitted).

Defendants argue that Plaintiff should have followed the procedures set forth in 25 C.F.R.

§ 2.8, to wit:

(a) A person or persons whose interests are adversely affected, or whose ability to protect such interests is impeded by the failure of an official to act on a request to the official, can make the official's inaction the subject of appeal, as follows:

> (1) Request in writing that the official take the action originally asked of him/her;
> (2) Describe the interest adversely affected by the official's inaction, including a description of the loss, impairment or impediment of such interest caused by the official's inaction;
> (3) State that, unless the official involved either takes action on the merits of the written request within 10 days of receipt of such request by official, or establishes a date by which action will be taken, an appeal shall be filed in accordance with this part.

Defendants argue "Plaintiff has no claim if it has not exhausted the administrative remedies afforded by that procedure." Plaintiff argues that it was under no obligation to exhaust administrative remedies prior to filing this suit.

"Under the doctrine of exhaustion of administrative remedies, 'no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted.'" Coosewoon v. Meridian Oil Co., 25 F.3d 920, 924 (10th Cir. 1994). As Plaintiff argues, it must exhaust administrative remedies only if "a statute or agency rule dictates that exhaustion is required." Id. The Supreme Court has stated that "the exhaustion doctrine continues to exist under the APA to the extent that it is required by statute or by agency rule as a prerequisite to judicial review." Darby, 509 U.S. at 153. Generally, when a plaintiff brings an action pursuant to the APA, it is required to exhaust all administrative remedies.

Nevertheless, "[t]he exhaustion doctrine is subject to numerous exceptions, and its application in a specific case requires consideration of the purposes of the doctrine and the particular administrative scheme involved." Dine Citizens Against Ruining Our Environment v. Klein, 676 F.Supp. 1198, 1207 (D. Colo. 2009). "The purpose of the exhaustion rule is to permit agencies to exercise discretion and apply their expertise, to allow the complete development of

the record before judicial review, to prevent parties from circumventing the procedures established by Congress, and to avoid unnecessary judicial decisions by giving the agency an opportunity to correct errors." Urban by Urban v. Jefferson County School Dist. R-1, 89 F.3d 720, 724 (10th Cir. 1996).

Exhaustion is not required "when administrative remedies would be futile, when they would fail to provide relief, or when 'an agency has adopted a policy or pursued a practice of generally applicability that is contrary to law.'" Id. (citation omitted). When Plaintiff filed this action requesting declaratory and injunctive relief requiring Defendants to give Plaintiff an accounting of its trust assets, it had previously requested such an accounting repeatedly from Defendants. Plaintiff had made such requests in writing.[12]

Defendants repeatedly failed or refused to provide the accounting. Clearly, requiring Plaintiff to follow through with the remainder of Defendants' procedure would have been futile.[13]

---

[12]An example of such a written request is the July 24, 2003 letter from Plaintiff's Chief, Tarpie Yargee, to the BIA stating that according to Plaintiff's records, its PL account had a balance of $15,962.06 as of June 30, 2003 and requesting a complete reconciliation of the account. The Chief also requested a complete history of the account, including "the purpose of the account, details of where the funds originated, who authorized the withdrawals, and complete details of every transaction of the account in chronological order from the first transaction to the present." The Chief explained that the matter was urgent as Plaintiff was planning its budget for the coming fiscal year and requested the information be delivered to Plaintiff by August 20, 2003.

In another letter dated September 30, 1987, counsel representing Plaintiff requested: (1) that the Wetumka Project lands be assigned to Plaintiff, (2) a full accounting of its trust assets, and (3) that the DOI and all related agencies recognize Plaintiff as an independent tribal entity with the right to direct access to federal agencies without having to filter communications through the Creek Nation. He also requested a hearing with respect to these requests.

[13]Sending the requests for the desired agency action (an accounting) was the first step. In order to fully comply with Defendants' procedures, however, Plaintiff should have included: (1) a description of how Defendants' inaction was adversely affecting Plaintiff's interests, and (2) a threat to file an appeal if Defendants did not take action within ten days. The court does not believe that adding such a description or threat to a letter of request would have gained Plaintiff

Moreover, Defendants had adopted a policy or pursued a practice of not providing the requested accounting to Plaintiff. Such policy or practice is contrary to law if the accounting is owed.

Defendants have now clearly stated their conclusion that they do not hold assets in trust for Plaintiff and thus do not owe Plaintiff an accounting. After abundant resolution discussions, Defendants have clearly expressed that this is their final decision despite, and seemingly in complete disregard to, considerable evidence to the contrary.

The court finds that pursuit of administrative remedies would have been futile and would have failed to provide relief. The court also finds that Defendants had adopted a policy or pursued a practice with Plaintiff that is contrary to law if Plaintiff is the rightful beneficiary of the Surface Lease Income Trust. Plaintiff, therefore, is excused from the exhaustion requirement in this action. The motion to dismiss is denied. The court, therefore, moves onto the summary judgment motions.

## SUMMARY JUDGMENT MOTIONS

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). In applying the summary judgment standard, the court views the evidence and draws reasonable inferences therefrom in the light most favorable to the nonmoving party. Burke v. Utah Transit Auth. & Local 382, 462 F.3d 1253, 1258 (10th Cir. 2006). At this stage, Plaintiff may not rely on mere allegations, but must have set forth, by affidavit or other evidence, specific facts in support of its complaint. Id.

---

the accounting it sought.

## DEFENDANTS' SUMMARY JUDGMENT MOTION

Defendants argue that if the court does not grant their motion to dismiss, that it should grant them summary judgment because they do not hold any funds, non-monetary assets or resources of any kind in trust for Plaintiff. Defendants also argue that Plaintiff has failed to show that the Secretary of the Treasury has an obligation to provide Plaintiff with an accounting.

### Defendants' Conclusion That They Hold No Assets in Trust for Plaintiff

Defendants argue that because the Wetumka Project lands were placed in trust for the Creek Nation rather than for Plaintiff, any income from those lands belongs to the Creek Nation rather than Plaintiff. Plaintiff has presented considerable evidence, however, that the intent behind the Wetumka Project lands purchase was to provide Plaintiff with land. More importantly, Plaintiff has presented evidence that the Surface Lease Income Trust was set up for Plaintiff, including the fact that the trust itself bears Plaintiff's name. Defendants are correct that this fact is not determinative, but it is quite relevant.

The court finds that a genuine issue of material fact exists regarding whether Defendants hold any assets in trust belonging to Plaintiff and, therefore, owe Plaintiff an accounting. Accordingly, Defendants' summary judgment motion is denied.

### Secretary of the Treasury

Defendants do not actually argue that the Secretary of the Treasury has no obligation to provide Plaintiff with a trust accounting. Instead, they argue simply that Plaintiff has failed to establish that the Secretary of the Treasury has such an obligation or that the Secretary of the Treasury has failed to meet that obligation. The court disagrees. Contrary to Defendants' assertion, Plaintiff included sufficient allegations in its Complaint and has included case law that

establishes the Secretary of the Treasury's obligation. Plaintiff has also provided evidence that the Secretary of the Treasury has failed to meet his obligation.

"[T]he Secretary of the Interior and the Secretary of the Treasury are the designated trustee-delegates for the IIM trust. Each Secretary, or his designates, has specific fiduciary responsibilities that must be fulfilled lest the United States breach its fiduciary obligations." Cobell, 240 F.3d at 1088. "While the Interior Department is responsible for executing most of the federal government's trust duties, the Treasury Department has substantial trust responsibilities as well. In particular, Treasury holds and invests IIM funds at the Interior Department's direction and provides accounting and financial management services." Id.

Plaintiff has provided sufficient evidence that the Secretary of the Treasury failed to meet his fiduciary responsibilities with regard to providing Plaintiff with an accounting of its trust assets. Defendants' motion is denied.

## PLAINTIFF'S SUMMARY JUDGMENT MOTION

Plaintiff argues that Defendants owe Plaintiff an accounting on the Surface Lease Income Trust, that Defendants have failed to put forth any evidence proving that they have fulfilled or discharged their fiduciary obligations, and that the court should grant summary judgment in Plaintiff's favor. As the court previously noted, whether Defendants hold assets in trust for Plaintiff and, therefore, owe Plaintiff an accounting of those trust assets is a question of fact.

Both parties have presented evidence regarding whether Defendants hold assets in trust for Plaintiff. The court has previously ruled that a genuine issue of material fact exists regarding whether Defendants hold any assets in trust belonging to Plaintiff. Accordingly, Plaintiff's summary judgment motion is also denied.

## PLAINTIFF'S DISMISSED LAND CLAIMS

Plaintiff included a footnote in its response to the Defendants' motion requesting the court to consider the effect of Defendants' subsequent admission that the Wetumka Project lands were never assigned *to the Creek Nation* on its previous dismissal of Plaintiff's claim for those lands. The court was aware when it dismissed Plaintiff's claims with regard to the Wetumka Project lands that the lands were not assigned *to the Creek Nation*, but were instead held by the United States in trust *for the Creek Nation*.[14]

Plaintiff believed that the Wetumka Project lands were being purchased for its benefit, yet when the United States acquired those lands, it placed them in trust in the name of the United States for the benefit of the *Creek Nation*. This one act, upon which Plaintiff brought its land claims, occurred prior to 1946. The court held, therefore, that these claims are excluded by the Indian Claims Commission Act (hereinafter "ICCA").

Given its belief that the Wetumka Project lands were acquired for its benefit, Plaintiff could have filed a timely claim after the lands were placed in trust for the benefit of another tribe, the Creek Nation, but it did not. The court does not believe that fact that the United States never took the next step of assigning the lands to the Creek Nation or another tribe, band, group, or individual Indian extends the ICCA statute of limitations. Plaintiff was aware the lands it believed were acquired for its benefit were being held in trust for the benefit of another tribe. As the court previously ruled, no continuing claim exists. Plaintiff's claims relating to the Wetumka

---

[14]On review, the court perhaps used some ill-chosen words in its November 17, 2008 Order when it stated on page eight that the Wetumka Project lands were assigned "to the Creek Nation." This was simply an error. That error of nomenclature does not, however, affect the outcome of that Order. The remainder of the Order, including even the next sentence, make clear that the Wetumka Project lands were held in trust by the United States "for the Creek Nation."

Project lands are excluded by the ICCA.

## THE FINAL AGENCY ACTION IS ARBITRARY & CAPRICIOUS

The court denied both parties' summary judgment motions because it found that a genuine issue of material fact exists as to whether Defendants hold assets in trust for Plaintiff. Generally, the court would now hold a trial to decide the issue. This action must be reviewed pursuant to section 706(2) of the APA, however, as a final agency action has occurred.

Under 5 U.S.C. § 706(2), the court is to hold unlawful and set aside any agency action, finding, and conclusion if it finds such action, finding or conclusion to be:

> (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law;
> (B) contrary to constitutional right, power, privilege, or immunity;
> (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;
> (D) without observance of procedure required by law;
> (E) unsupported by substantial evidence in a case subject to section 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or
> (F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.[15]

The reviewing court is tasked with applying the appropriate standard under section 706. Florida Power & Light Co. v. Lorion, 470 U.S. 729, 743 (1985).

Additionally, the court is generally limited to the administrative record.

> If the record before the agency does not support the agency action, if the agency has not considered all relevant factors, or if the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the

---

[15]De novo review under section 706(2)(F) is only appropriate in two instances: "(1) when the action is adjudicatory in nature and the agency's fact-finding procedures [are] inadequate; and (2) when issues not previously before the agency are raised in a proceeding to *enforce* a nonadjudicatory action." Franklin Sav. Ass'n. v. Director, Office of Thrift Supervision, 934 F.2d 1127, 1142 n. 7 (10th Cir. 1991) (emphasis in original). The court does not believe either instance applies here.

proper course, except in rare circumstances, is to remand to the agency for
additional investigation or explanation.

Id., 470 U.S. at 744 (1985).  "The reviewing court is not generally empowered to conduct a *de*
*novo* inquiry into the matter being reviewed and to reach its own conclusions based on such an
inquiry."  Id.

"If an agency takes action not based on neutral and rational principles, the APA grants
federal courts power to set aside the agency's action as 'arbitrary' or 'capricious.'  For these
reasons, agencies under the APA are subject to a 'searching and careful' review by the courts."
F.C.C. v. Fox Television Stations, Inc., 129 S.Ct. 1800, 1823-24 (2009) (citations omitted).  An
agency action is arbitrary and capricious "if the agency 'entirely failed to consider an important
aspect of the problem, offered an explanation for its decision that runs counter to the evidence
before the agency, or is implausible that it could not be ascribed to a difference in view or the
product of agency expertise.'"  United Keetoowah Band of Cherokee Indians of Oklahoma v.
United States Dept. of Housing and Urban Dev., 567 F.3d 1235, 1239 (10th Cir. 2009).

A court may not substitute its judgment for that of government agencies.  Id.  While the
arbitrary and capricious standard is narrow, however, the court must "engage in a substantial
inquiry" and conduct a "thorough, probing, in-depth review."  Id.

The court delineated above the scant evidence upon which Defendants came to their final
conclusion that they do not hold any assets in trust for Plaintiff.  Defendants simply argue that
because the Wetumka Project lands were held in trust for the Creek Nation and because at least
sometimes they required the Creek Nation's approval before disbursing assets from the Surface
Lease Income Trust to Plaintiff, then that trust belongs to the Creek Nation, not Plaintiff.
Defendants seem to entirely ignore substantial evidence that tends to demonstrate that the

Surface Lease Income Trust was created for the benefit of Plaintiff.

This court will not substitute its judgment for that of Defendants. The court does believe, however, that Defendants failed to consider important aspects in making its decision on ownership of the Surface Lease Income Trust. The court finds Defendants conclusion on the ownership of the Surface Lease Income Trust to be arbitrary and capricious. The Defendants' failure to produce or provide any more than a *de minimus* administrative record requires this result. Accordingly, the court remands this matter to Defendants for further investigation and explanation.

To provide such an explanation and supported final decision, Defendants are to assemble a full administrative record to include all of the evidence they possess with regard to the Surface Lease Income Trust and reconsider their decision on the matter of the ownership of the Surface Lease Income Trust. A formal hearing is not necessarily required to compile the administrative record, but the court strongly suggests that Defendants hold a formal hearing before arriving at their decision. Additionally, because Defendants have stated their belief that the beneficiary of the Surface Lease Income Trust is the Creek Nation, the court suggests Defendants seek an opinion from the Creek Nation on the matter as well before making their decision.

Defendants shall assemble their administrative record and make their decision within six (6) months from the entry of this Order & Opinion. Should Defendants find that the Surface Lease Income Trust was created for the benefit of Plaintiff, Defendants shall proceed to provide Plaintiff with an accounting with all due haste.

## CONCLUSION

Accordingly, Plaintiff's motion for summary judgment [Docket No. 89] and the

Defendants' motion for dismissal or, in the alternative, for summary judgment [Docket Nos. 90 and 92] are both **DENIED**.  Defendants' motions in limine [Docket Nos. 105 and 106] are hereby denied as **MOOT**.  Defendants' conclusion that they do not hold assets in trust for Plaintiff is hereby set aside.

This action is hereby **REMANDED** to Defendants for additional investigation and explanation.  Defendants are to assemble a full administrative record to include all of the evidence they possess with regard to the Surface Lease Income Trust and reconsider their decision on the matter of the ownership of the Surface Lease Income Trust within six (6) months of the entry of this Order & Opinion.

IT IS SO ORDERED this 21st day of September, 2010.

**Dated this 21st Day of September 2010.**

Ronald A. White
United States District Judge
Eastern District of Oklahoma

j4h4i0