# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ALABAMA-QUASSARTE TRIBAL TOWN,<br><br>    Plaintiff,<br><br>v.<br><br>(1) UNITED STATES OF AMERICA,<br>(2) SALLY JEWELL, Secretary of the United States Department of the Interior,<br>(3) KEVIN K. WASHBURN, Associate Deputy of the Department of the Interior, and<br>(4) JACK LEW, Secretary of the Treasury,<br><br>    Defendants. | Case No. CIV-06-558-RAW |

## ORDER & OPINION

Before the court are the motion for summary judgment by the Alabama-Quassarte Tribal Town (hereinafter "AQTT")[1] [Docket No. 202] and Defendants' cross-motion for summary judgment[2] [Docket No. 212]. The AQTT argues that it is entitled to judgment as a matter of law because the decision of the Interior Board of Indian Appeal (hereinafter "IBIA") is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law. Defendants argue that they are entitled to judgment as a matter of law and that the court should uphold the

---

[1] The AQTT is a federally-recognized Indian tribe based in Wetumka, Oklahoma. The AQTT ratified its constitution and bylaws on May 24, 1939, and subsequently received federal recognition from the U.S. Department of the Interior (hereinafter "DOI") for the purposes of organizing under the Oklahoma Indian Welfare Act ("hereinafter OIWA"). The AQTT is one of three Creek Nation tribal towns organized and charged under OIWA pursuant to the provisions of 25 U.S.C. § 503.

[2] Local Civil Rule 7.1(b) provides that each motion or objection filed shall be a separate pleading. Nevertheless, for the sake of expediency, the court overlooks the combined briefing.

1

IBIA decision because the IBIA properly determined that Defendants do not hold lease income from the Wetumka Project lands in trust for AQTT.

**BACKGROUND**

The AQTT filed this case on December 29, 2006 against the United States, the Secretary and the Associate Deputy Secretary of the DOI, and the Secretary of the U.S. Department of the Treasury. The AQTT alleged that certain lands known as the Wetumka Project lands were purchased under OIWA for the benefit of the AQTT. The AQTT requested a declaratory judgment that the Defendants failed to fulfill their legal obligations and duties as trustees and an order compelling Defendants: (1) to assign the Wetumka Project lands to the AQTT, and (2) to provide the AQTT with a full and complete accounting of all the AQTT's trust funds and assets.

On November 17, 2008, in ruling on the Defendants' motion for partial judgment on the pleadings, the court entered an Order & Opinion dismissing all claims related to the Wetumka Project lands. The court found that the Wetumka Project lands were never placed in trust for the AQTT, that the AQTT's claims related to the Wetumka Project lands accrued on or before April 29, 1942, and that those claims, therefore, were time barred. Docket No. 50, pp. 7-14. The court further found that the Muscokgee (Creek) Nation (hereinafter "Creek Nation")[3] was a necessary party to any claim regarding the Wetumka Project lands and could not be joined. Id. at 13-14. The AQTT's claims related to the alleged tribal trust account, the "Surface Lease Income Trust,"

---

[3] The Creek Nation was given land in what is now Oklahoma and the right to perpetual self-government by a treaty signed on March 24, 1832. The Creek Nation had a written constitution providing for three branches of government as early as 1867. The Creek Nation later adopted a constitution pursuant to OIWA in 1979.

remained, as the court had insufficient information even to determine whether it was still in existence, much less whether the claim was timely.[4] Id.

On September 21, 2010, the court denied Defendants' motion to dismiss and the parties' cross motions for summary judgment. In that Order & Opinion, the court noted that from 1961 to 1976 income from surface leases on the Wetumka Project lands was deposited into IIM account number xxxx0008 in the AQTT's name.[5] At some point, the funds in that account were moved into Proceeds of Labor (hereinafter "PL") account number xxxx7067. The court continued to refer to those funds as the "Surface Lease Income Trust." The court found that Defendants ignored substantial evidence demonstrating that the Surface Lease Income Trust was created for the benefit of the AQTT and that Defendants' conclusion on the ownership of the Surface Lease Income Trust was arbitrary and capricious.

The court remanded this action to Defendants for additional investigation and explanation. The court directed Defendants to assemble a full administrative record to include all of the evidence they possess with regard to the Surface Lease Income Trust and to reconsider their decision on the matter of ownership of that Trust. On remand, this action was referred to the IBIA. The Creek Nation entered an appearance in the matter and submitted a brief on the issues. Docket No. 185, Exh. 4. On October 23, 2014, the IBIA issued its final reconsidered decision on referral from the Assistant Secretary of Indian Affairs. The IBIA determined that the Surface Lease Income Trust was not held in trust for the AQTT.

---

[4] According to the AQTT, between 1961 and 1976, income from surface leases derived from the Wetumka Project lands was deposited into an Individual Indian Money (hereinafter "IIM") account in the AQTT's name and was later transferred to a tribal trust account in its name. The court termed this the "Surface Lease Income Trust."

[5] A letter from an Oklahoma Agency Field Representative indicated that as of August 31, 1989, the account balance was $32,364.31.

On March 3, 2015, the AQTT filed its First Amended Complaint, adding the Creek Nation as a Defendant and adding a claim for appeal of the IBIA's decision, arguing that it was arbitrary and capricious.[6] On January 7, 2016, the court granted the Creek Nation's motion to dismiss, as it is entitled to and has not waived its sovereign immunity. Now before the court are the cross-motions for summary judgment.

**ANALYSIS**

In reviewing an agency action, the court holds unlawful and sets aside any action, findings or conclusions the court finds to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2). An agency action is arbitrary and capricious "if the agency 'entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.'" United Keetoowah Band of Cherokee Indians of Okla. v. United States Dept. of Housing and Urban Dev., 567 F.3d 1235, 1239 (10th Cir. 2009) (citation omitted). The standard of review is narrow, and the court may not substitute its judgment for that of the agency. Id. Nevertheless, the court must "engage in a substantial inquiry" and conduct a "thorough, probing, in-depth review." Id.

---

[6] The AQTT also attempted to revive its claim requesting assignment of the Wetumka Project lands, stating that on remand it discovered that the Creek Nation had passed a resolution assigning the Wetumka Project lands to the AQTT. The court dismissed that claim again on January 7, 2016, noting that the resolution was drafted, signed and filed with the United States in 1980, so the statute of limitations had passed. The AQTT disputes whether the resolution was a public document. Even if it were not, the resolution does not establish ownership. It merely states the intent of the Creek Nation that lands held in trust for tribal towns be assigned to those tribal towns. Further action would be necessary to transfer the property.

The court remanded this action because it found Defendants had not provided a sufficient explanation with supporting evidence for its determination that the United States did not hold any trust assets for the AQTT. The court further found Defendants failed to consider important aspects in making that determination. The court, therefore, directed Defendants to assemble a full administrative record to include all of the evidence they possess with regard to the Surface Lease Income Trust and reconsider their decision.

On remand, the Defendants followed the court's directive. They assembled a full administrative record, and the IBIA reconsidered the decision.[7] The IBIA noted that while the legal significance of the historical facts and evidence was disputed, the historical facts themselves were essentially undisputed. Then, after "a *de novo* review of the matter, considering the evidence and arguments relied upon by the parties, as well as additional evidence in the record," the IBIA concluded that the record does not show an assignment of the Surface Lease Income Trust to the AQTT and thus the Surface Lease Income Trust is not held in trust for the AQTT. Docket No. 164, pp. 4 and 30.

The AQTT has argued and continues to argue that it was entitled to the Wetumka Project lands and any income therefrom from the moment the lands were placed in trust. The AQTT bases this assertion on the DOI's intent that the lands be used for the AQTT's benefit and the AQTT's subsequent use of the land and funds therefrom, without regard to whether the DOI's intent was ever formally and legally put into effect.

---

[7] The IBIA described the record before it as being the record that was developed in the discovery process in the proceedings before this court. The record is over 4,900 documents, consisting of many more thousands of pages. The IBIA received final certification from the Eastern Oklahoma Regional Director of the Bureau of Indian Affairs (hereinafter "BIA") that to the best of the Regional Director's knowledge and belief, the record included all evidence the Department possessed with regard to the Surface Lease Income Trust after a complete and thorough search. Docket No. 164, Exh. 1, p. 4. Defendants filed a copy of the record with this court. Docket No. 199.

After a thorough, probing, in-depth review, considering the evidence and arguments relied upon by the parties, as well as additional evidence in the record, the court finds that the IBIA's Decision is well-reasoned and supported by the record. The IBIA recognized the DOI's original intent to eventually assign the Wetumka Project lands to the AQTT, the practice of allowing the AQTT to use and benefit from the lands and the Surface Lease Income Trust (with approval from the Creek Nation[8]), the practice of referring to the Trust as belonging to the AQTT, and the inclusion of the AQTT's name on the name of the Trust account. The IBIA reasoned, however, that the Wetumka Project lands remained in trust for the Creek Nation, the right to income from land is one of the usual incidents of ownership of land, and the record does not include or clearly point to the existence of a trust instrument transferring ownership in the lands from the Creek Nation to the AQTT.

The IBIA further reasoned that the practice of allowing lands and income held in trust for one tribe to be used for another is explained in this case by the DOI's historical view (however legally incorrect and objectionable to the AQTT[9]) that the AQTT was a subordinate band within the Creek Nation. As the AQTT and its members were considered to be part of the Creek Nation, allowing the AQTT to benefit from the Wetumka Project lands and the income was not inconsistent with the retention of beneficial title by the Creek Nation.

---

[8] Although the DOI deviated from its policy in several instances, it required that the Creek Nation approve expenditures from the Surface Lease Income Trust. The IBIA determined that the BIA considered the Creek Nation's 1985 Resolution acting on the AQTT's budget as granting "blanket approval" for further disbursements to the AQTT. Id. at 21. The record does not show that the AQTT objected to the Creek Nation's involvement prior to 1980. Id. at 3, 12, 18, 20, and 28.

[9] The AQTT's Constitution expressly provides that it "shall not in any way be construed to alter, abridge or otherwise jeopardize the rights and privileges of the members of this Tribal Town as citizens of the Creek Nation." Id. at 6 and 18 (citing the AQTT Constitution, Art. IX). The IBIA noted that it was undisputed that the AQTT citizens have dual citizenship in the AQTT and in the Creek Nation. Id. at 18, n. 30.

Ultimately, the IBIA determined that the instruments that created the Surface Lease Income Trust are the deeds of conveyance for the Wetumka Project lands. The deeds placed the lands in trust "for the Creek Tribe" and did not create a vested beneficial interest in any entity other than the Creek Tribe.[10] The deeds also authorized the Secretary to *subsequently* assign the lands to another tribe, band, cooperative group organized under OIWA, or individual Indian. This was a two-step process for the transfer of the property. Giving an example of other tribal lands that were ultimately transferred to a tribal town with a formal written instrument, the IBIA noted that in its view, "[t]he fact that both steps involved conveyances of property interest means . . . that each step must be taken through a formal written instrument of conveyance." Id. at 27. For whatever reason, be it that the AQTT never developed a plan for the use of the lands[11] or for some other reason, the lands were never so subsequently assigned.

With regard to the name on the Surface Lease Income Trust – the original IIM account bore both the AQTT name and the Creek Nation name. While the PL account bore only the AQTT name, the IBIA reasoned that it is unlikely the individual(s) who named the PL account would have the authority to assign the Trust to the AQTT. The IBIA was not convinced that the actions taken to move the funds from an IIM to a PL account in 1987 effected a legal change in the beneficial ownership of the funds.

The IBIA's Decision is not arbitrary or capricious. The IBIA considered every important aspect of the problem and offered explanations for its Decision that were consistent with the evidence before it. The Decision is well-reasoned and supported by the evidence. The Wetumka Project lands were placed in trust for the Creek Nation. There was no evidence before the IBIA,

---

[10] The DOI consistently treated the Creek Nation as the beneficial owner of the lands. The deeds of conveyance did not assign the income to the AQTT, nor did they take the land in trust for the Creek Nation for the use of the AQTT. Id. at 27.

[11] See Id. at 8.

7

there is no evidence now before the court, and the AQTT has not pointed to the existence of any evidence that the lands or the income therefrom were ever assigned to the AQTT. Accordingly, the Decision of the IBIA is hereby AFFIRMED.

**CONCLUSION**

The AQTT's motion for summary judgment [Docket No. 202] is hereby DENIED. Defendants' motion for summary judgment [Docket No. 212] is hereby GRANTED.

**IT IS SO ORDERED** this 30th day of December, 2016.

_____
**THE HONORABLE RONALD A. WHITE
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF OKLAHOMA**